IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:17-CV-223-FL

| | | |
|---|---|---|
| EDGE-WORKS MANUFACTURING COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | ORDER |
| HSG, LLC, | ) ) ) | |
| Defendant. | ) | |

This matter is before the court on defendant's motion to stay proceedings pending the outcome of a reexamination of the patent-in-suit recently initiated by the United States Patent and Trademark Office, (DE 42), and motion to continue discovery deadlines pending the court's resolution of the motion to stay, (DE 43). The issues raised have been briefed fully and in this posture are ripe for adjudication. For the reasons that follow, defendant's motion to stay is granted and the motion to continue the discovery deadlines is denied as moot.

## STATEMENT OF THE CASE

Plaintiff initiated this case by complaint filed November 22, 2017, alleging that defendant's variable compression ammunition magazine pouches, known as the Polymer Taco pouches ("accused products"), infringe upon U.S. Patent No. 9,795,210 ("the '210 patent"). Plaintiff was granted this patent in conjunction with the development of its own variable compression ammunition magazine pouches, known as the Hardshell Scorpion pouches.

Plaintiff filed a motion for preliminary injunction on December 1, 2017, seeking an order prohibiting defendant from further sales of its accused products. On January 11, 2018, the court

denied plaintiff's motion, holding plaintiff had forecasted sufficient evidence to show it will likely prove that defendant's accused products infringe the '210 patent and that defendant had failed to raise a substantial question of invalidity. However, the court denied plaintiff's motion because plaintiff failed to demonstrate irreparable harm.

On April 9, 2018, defendant filed the instant motion to stay, arguing that this action should be stayed pending the outcome of the reexamination proceedings of the '210 patent before the Patent and Trademark Office ("PTO").

## COURT'S DISCUSSION

A.     Standard of Review

A court's "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. N. Am. Co., 299 U.S. 248, 254 (1936). "The determination of whether to grant a stay pending the outcome of the PTO's reexamination is soundly within the court's discretion." Biogaia AB v. Nature's Way Prod., Inc., No. 5:10-CV-449-FL, 2011 WL 3664350, at *1 (E.D.N.C. Aug. 18, 2011) (citing Cellectis S.A. v. Precision Biosciences, Inc., No. 5:08-CV-00119-H, 2010 WL 3430854, at *2 (E.D.N.C. Aug. 31, 2010)). Courts consider the following factors to aide in their determinations of whether to grant a stay: "(1) the stage of the litigation, including whether discovery is or will be almost completed and whether the matter has been scheduled for trial; (2) whether a stay will unduly prejudice or tactically disadvantage the nonmoving party; and, (3) whether a stay will simplify the issues in question and streamline the trial, thereby reducing the burden of litigation on the parties and on the court." Id. "There is a liberal policy in favor of granting motions to stay proceedings pending the outcome of PTO reexamination

or reissuance proceedings." Id.

As this court has recognized, there are benefits to staying litigation pending a reexamination proceeding if the above factors support a stay:

> 1) all prior art presented to the Court will have been first considered by the PTO with its particular expertise; 2) many discovery problems relating to the prior art can be alleviated by the PTO examination; 3) in those cases resulting in effective invalidity of the patent, the suit will likely be dismissed; 4) the outcome of the reexamination may encourage a settlement without the further use of the Court; 5) the record of reexamination would likely be entered at trial, thereby reducing the complexity and length of the litigation; 6) issues, defenses and evidence will be effectively limited in pre-trial conferences after a reexamination; and 7) the cost of litigation will likely be reduced.

Id. at *2.

1. Dilatory Tactics

Before addressing the three factors listed above, the court addresses separately plaintiff's general argument that this case should not be stayed because defendant chose to pursue ex parte reexamination with the PTO rather than inter partes review ("IPR"), "deliberately [choosing] the slowest, non-binding option." (DE 45 at 3).[1]

At least one court has construed an alleged infringer's choice to seek ex parte reexamination instead of pursuing IPR as an indication of "delaying tactics." Carlson Pet Prod., Inc. v. N. States Indus., Inc., No. 017CV02529PJSKMM, 2018 WL 1152001, at *1 (D. Minn. Mar. 5, 2018) (citing Elm, Inc. v. VenMill Indus., Inc., No. 14–cv–4585 (SRC), Doc. No. 43 at 2 (D.N.J. June 18, 2015) (denying a motion to stay and inferring dilatory motive from, inter alia, the fact that the defendant

---

[1] Reexamination allows the PTO to reconsider the validity of an existing patent. 35 U.S.C. §§ 301, et seq. Upon reexamination, the patent may be upheld, amended, or invalidated. Id. at § 307. There are two types of reexamination proceedings: ex parte and IPR. An IPR, in contrast to the ex parte reexamination, provides a third party the right to participate in the reexamination process and automatically stays any pending civil action. See 35 U.S.C. § 315. The results of the reexamination in an IPR, but not ex parte reexamination, are binding on the relevant parties and cannot be litigated again in any subsequent or concurrent civil action. Id.

3

sought ex parte reexamination instead of IPR)).

However, here, as in Carlson, plaintiff offers no evidence that defendant sought ex parte reexamination for an improper purpose, and the court declines to so find absent any evidence in support. See id. ("However, the record in this case does not support an inference that North States requested ex parte reexamination for an improper purpose.").[2]

2. Stage of Litigation

This case is in the relatively early stages of litigation. The parties have completed the following: plaintiff has submitted preliminary infringement contentions; both parties have issued written discovery; the parties have submitted responses to discovery requests, with plaintiff also producing documents; the parties have exchanged proposed terms and claim elements for construction, following an initial conference on the same; and defendant has submitted preliminary invalidity contentions. (See DE 45 at 2-3). Additionally, some motion practice has occurred, with the court having already resolved plaintiff's motion for preliminary injunction.

However, plaintiff brought this suit less than six months ago. No depositions have been taken or scheduled, no trial date has been set, the parties have not exchanged any expert identification or reports, no claim construction rulings or hearings have occurred, and no substantive motions have been filed.

Although plaintiff argues "significant discovery and claim construction steps already

---

[2] Plaintiff argues that defendant "waited five (5) months before filing its motion to stay" and therefore "[t]here is a clear inference of tactical delay." (DE 45 at 10). The court is not persuaded. Plaintiff filed its complaint in this action on November 22, 2017 and filed an emergency motion for temporary restraining order and preliminary injunction on December 1, 2017. Defendant responded to plaintiff's filings and additionally sought reexamination of the '210 patent by the PTO on February 13, 2018, which was granted by the PTO on February 27, 2018. Thereafter, on April 9, 2018, defendant filed its motion to stay in this court pending resolution of the PTO reexamination. The court does not find a clear inference of tactical delay based on this timeline.

occurred," (DE 45 at 2), this case is in an early stage of litigation with significant and likely costly discovery yet to be accomplished.

In sum, this is not a case where the request to stay the proceedings was made late in the litigation, after the parties and the court have invested significant resources. This factor weighs in favor of granting the motion to stay.

3. Prejudice to Plaintiff

Plaintiff's strongest argument is that courts have regularly denied motions to stay where, as here, parties to the lawsuit are direct competitors in the market place, and courts have found inequitable the continuing sales of allegedly infringing products for lengthy periods of time during the pendency of a stay. (DE 45 at 10).

Defendant does not dispute that a stay pending the outcome of the reexamination process could add multiple years to this litigation and, following even a negative outcome of the process for defendant, defendant could then still challenge the validity of the '210 patent in this lawsuit. (See Ex Parte Reexamination Filing Data - September 30, 2017 issued by the PTO (DE 45-3) (stating average duration for an ex parte reexamination at the PTO is 26.4 months)); see also eCOMSYSTEMS, Inc. v. Shared Mktg. Servs., Inc., No. 810-CV-1531-T-33AEP, 2011 WL 280942, at *4 (M.D. Fla. Jan. 26, 2011) ("the reexamination process averages 25.4 months to complete, and the appellate process averages 24 months to complete").

However, beyond significant potential delay, plaintiff offers no further evidence of undue prejudice except a general and unsubstantiated claim its market share and goodwill will be greatly damaged. See Biogaia, 2011 WL 3664350, at *3 (citing Cellectis, 2010 WL 3430854, at *4) ("'delay is inherent in the reexamination process' and does not constitute, by itself undue prejudice"); see

also Shurtape Techs., LLC v. 3M Co., No. 5:11CV17-RLV, 2013 WL 789984, at *2 (W.D.N.C. Mar. 4, 2013) (denying motion to stay in part finding prejudice to plaintiff where plaintiff "presents evidence demonstrating that it has already lost approximately two-thirds of its previous shelf space to 3M in all of the Lowes' Home Improvement Stores and The Home Depot Stores").

"Courts generally assume that a stay will be prejudicial where . . . the plaintiff and defendant in an infringement suit are direct competitors." Mike's Train House, Inc. v. Broadway Ltd. Imports, LLC, No. JKB-09-2657, 2011 WL 836673, at *2 (D. Md. Mar. 3, 2011) (citing Tesco Corp. v. Weatherford Intern., 599 F.Supp.2d 848, 851 (S.D.Tex.2009)). Also, where the parties are direct competitors, "it may sometimes be impossible to restore a patentee's original market share after years of infringement, because customers' business relationships and expectations will have changed." Id. (citing Polymer Technologies v. Bridwell, 103 F.3d 970, 975–76 (Fed.Cir.1996)).

However, here, the court has insufficient information as to the extent of plaintiff and defendant's competition,[3] or relative market share, or any information beyond speculation as to damages generally.[4] Additionally, plaintiff has offered no evidence or argument that recovery of monetary damages years from now after reexamination and after lifting of a stay may not fully

---

[3] As previously noted by the court, "[p]laintiff and defendant both manufacture and sell tactical gear, including ammunition magazine pouches, marketed to people serving in the military, law enforcement, and individual consumers." Edge-Works, 285 F. Supp. 3d at 889. However, defendant alleges that it partners with approximately 500 dealers to distribute its products in more than 200 countries on all seven continents. (DE 21 at 4). Defendant also alleges that plaintiff "sells its products primarily online, with few if any retail dealers or physical stores." (DE 22 at 3–4).

[4] As stated by the court previously in the context of denying plaintiff's motion for preliminary injunction:

> Plaintiff also fails to provide evidence of the market at issue, stating only that defendant's release of its accused products will cause lost sales, customers, and market share . . . . Plaintiff makes no showing as to the extent of defendant's release and offers no evidence as to the potential impact on plaintiff's sales, customers, or market share. In fact, plaintiff offers no evidence regarding its share of the market or how plaintiff's market is similar or different than defendant's market.

Edge-Works Mfg. Co. v. HSG, LLC, 285 F. Supp. 3d 883, 900–01 (E.D.N.C. 2018).

6

compensate plaintiff for the alleged infringement. See NTP, Inc. v. T–Mobile, USA, Inc., No. 3:07cv548, 2007 WL 3254796, at *3 (E.D. Va. Nov. 2, 2007) (finding a stay would not harm the plaintiff where monetary damages are available for infringement during the pendency of the stay); NAS Nalle Automation Sys., LLC v. DJS Sys., Inc., No. CV 6:10-2462-TMC, 2011 WL 13141594, at *2 (D.S.C. Nov. 23, 2011) ("any harm that NAS experiences during the pendency of a stay, including harm caused by sales of DJS products, are recoverable through monetary damages").

In sum, the delay as put forth by plaintiff is substantial, and although plaintiff offers little further argument, the court recognizes the significance of such a delay. However, without further support, this factor weighs only slightly in plaintiff's favor.

  4.  Simplification of the Matters at Issue

However reexamination resolves itself, staying this case so the PTO can apply its expertise will necessarily simplify this litigation. Defendant's request for ex parte reexamination was granted in part based on a finding of "substantial new question of patentability" grounded in prior art references not previously considered by the PTO. (See DE 41-2 at 9). Although plaintiff argues that such a finding carries very little weight in that statistically in that the PTO almost always grants ex parte reexamination requests, (DE 45 at 5), this assertion does not change the potential impact the reexamination process has on the matters at issue.

If the PTO finds the '210 patent invalid, plaintiff's only claim against defendant in this action will be moot and nothing will remain to adjudicate in this action, including defendant's counterclaim for declaratory relief. Additionally, no matter the outcome, the reexamination process will focus on at least some of the same substantial issues of patentability and invalidity that are issue in the present litigation. Reexamination could result in "eliminating, clarifying, or limiting the claims,"

Canady v. Erbe Elektromedizin GmbH, 271 F. Supp. 2d 64, 68 (D.D.C.2002), and could "simplify discovery in this litigation, clarifying the areas where the parties need to develop their positions and the Court needs to focus its attention," Carlson, 2018 WL 1152001, at *3. Additionally, "[i]f the PTO upholds the validity of some or all of the patent claims, this too will simplify the issues: it will provide 'strong evidence that [the] district court must consider in assessing whether [North States] has met its burden of clear and convincing evidence [on the issue of invalidity].'" Id. (citing Broad. Innovation, LLC v. Charter Commc'ns, Inc., No. 03–cv–2223–ABJ–BNB, 2006 WL 1897165, at *2 (D. Colo. July 11, 2006)).[5]

In sum, the court has balanced all the factors and find overall they weigh in favor of granting defendant's motion to stay the instant action pending the resolution of the PTO's reexamination proceedings.

## CONCLUSION

Based on the foregoing, defendant's motion to stay (DE 42) is GRANTED, and defendant's motion to continue discovery deadlines pending the court's resolution of the motion to stay (DE 43) is DENIED AS MOOT.

SO ORDERED, this the 30th day of April, 2018.

_____
LOUISE W. FLANAGAN
United States District Judge

---

[5] Plaintiff additionally argues that defendant's arguments for reexamination have already been addressed by this court in its preliminary injunction order, in particular the court's holding that defendant failed to raise a substantial question that the '210 patent is invalid as obvious. See Edge-Works, 285 F. Supp. 3d at 899. First, the court need not address validity arguments at this juncture. See Biogaia, 2011 WL 3664350, at *3n.3 ("The very purpose of the PTO reexamination is to determine the validity of the patents, and any argument on validity made [in opposition to a motion to stay] without the benefit of the reexamination is premature."). Additionally, plaintiff is incorrect the court addressed the merits of defendant's argument. The court's holding was entirely based on defendant's lack of evidence in support of its argument, in that defendant offered no evidence or reason as to "why a person of ordinary skill in the art would have been motivated to combine the prior art referenced, would have had a reasonable expectation of success in doing so, or how such a combination would meet every limitation of claim 1 of the '210 patent." Edge-Works, 285 F. Supp. 3d at 899. The court takes no position as to what evidence defendant may offer regarding this argument before the PTO.