IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:17-CV-223-FL

EDGE-WORKS MANUFACTURING          )
COMPANY,                          )
                                  )
            Plaintiff,            )
                                  )
      v.                          )
                                  )
HSG, LLC, a North Carolina limited )
liability company, and CTGI, LLC, a North )
Carolina limited liability company, )
                                  )        CLAIM CONSTRUCTION
            Defendants.           )              ORDER
                                  )
                                  )
HSG, LLC, a North Carolina limited )
liability company, and CTGI, LLC, a North )
Carolina limited liability company, )
                                  )
            Counter Claimants,    )
                                  )
      v.                          )
                                  )
EDGE-WORKS MANUFACTURING          )
COMPANY,                          )
                                  )
            Counter Defendant.    )

        This matter is before the court for a claim construction order. The parties filed a joint claim

construction statement and claim construction briefs, as well as responses. In addition, motions to

exclude expert testimony were filed both by plaintiff and counter defendant Edge-Works

Manufacturing Company ("Edge-Works" or "plaintiff") (DE 82) and defendants and counter

claimants HSG, LLC ("HSG") and CTGI, LLC ("CTGI") (collectively, "defendants") (DE 84). In

this posture, the issues raised are ripe for ruling. The court sets forth below its decision on the parties' disputed claim terms and denies as moot the parties' motions to exclude expert testimony.

## STATEMENT OF THE CASE

Plaintiff initiated this case by complaint filed November 22, 2017, alleging that defendant HSG's variable compression ammunition magazine pouches, known as the Polymer Taco pouches ("accused products"), infringe upon U.S. Patent No. 9,795,210 ("the '210 patent"). Plaintiff was granted this patent in conjunction with the development of its own variable compression ammunition magazine pouches, known as the Hardshell Scorpion pouches.[1]

Plaintiff filed emergency motion for temporary restraining order and motion for preliminary injunction on December 1, 2017, seeking an order prohibiting defendant HSG from further sales of its accused products. On December 18, 2017, the court denied plaintiff's emergency motion for temporary restraining order and directed briefing on plaintiff's motion for preliminary injunction.

Following briefing, the court denied plaintiff's motion on January 11, 2018, because plaintiff failed to demonstrate irreparable harm. In so holding, the court also held plaintiff had forecasted sufficient evidence to show it will likely prove that defendant's accused products infringe the '210 patent and that defendant had failed to raise a substantial question of invalidity, also adopting for purposes of resolving plaintiff's motion the definition of "covered" as to "put something on top or

---

[1]    Edge-Works and HSG have also been before this court in HSG, LLC v. Edge-Works Manufacturing Company, et al, 7:17-CV-29-FL, where, in part, HSG asserted claims against Edge-Works for breach of contract and the covenant of good faith and fair dealing, and HSG, LLC v. Edge-Works Manufacturing Company, 7:18-CV-166, where HSG asserted claims against Edge-Works for false advertising, unfair or deceptive trade practices, and unfair competition. In the former case, the court granted in part and denied in part both parties' motions for summary judgment on March 11, 2019. Motions regarding costs and attorneys' fees remain pending. In the latter case, the court granted Edge-Work's motion to dismiss on August 8, 2019, dismissing all of HSG's claims.

in front of (something) in order to protect or conceal it." (DE 32 at 11-13). Case management order followed on February 21, 2018, providing for the close of discovery to occur on April 1, 2019.

On April 9, 2018, defendant filed motion to stay this case pending the outcome of reexamination proceedings of the '210 patent before the Patent and Trademark Office ("PTO"),which the court granted on April 30, 2018. Following conclusion of the reexamination proceedings, wherein the PTO confirmed the validity of the '210 patent, plaintiff filed unopposed motion to lift stay and amend case management order, which the court granted on November 29, 2018, entering amended case management order on December 18, 2018.

On January 28, 2019, plaintiff filed unopposed motion for leave to file first amended complaint and stipulation regarding scheduling order, both of which the court allowed, further amending the case management order to provide for the close of discovery to occur on November 15, 2019. In amended complaint, plaintiff added as defendant Comp-Tac Victory Gear, LLC, ("Comp-Tac"), an entity that had been acquired by defendant HSG, asserting claims against both defendants for infringement of both the previously-identified '210 patent and U.S. Patent No. 9,668,568 (the "'568 patent"). Thereafter, with consent of all parties and by order of the court, plaintiff filed second amended complaint on March 11, 2019, substituting all references previously made to Comp-Tac to currently-named defendant CTG1.[2]

On March 12, 2019, defendant HSG and defendant CTGI filed answers to second amended complaint, both asserting counterclaims for declaratory judgment of non-infringement of the '210 and '568 patents as well as declaratory judgment of invalidity as to the same patents.

---

[2]    An owner of defendant HSG formed defendant CTG1 to purchase the assets of formerly-named defendant Comp-Tac; as stated above, plaintiff alleges defendant HSG and defendant CTG1 sell products that infringe the '210 and '568 patents.  (See Sec. Am. Compl. (DE 70) ¶¶ 24-30; DE 75 ¶¶ 24-30; DE 76 ¶¶ 24-30).

As required by the court's case management order and Local Patent Rule 304.3, the parties filed a joint claim construction statement on April 10, 2019, setting forth five sets of disputed claim terms as to the two patents at issue and proposed constructions for those terms.[3] The parties filed opening claim construction briefs and responsive claim construction briefs in May and June, 2019. Additionally, on June 7, 2019, plaintiff moved to exclude expert testimony of James Cagle ("Cagle"), an expert retained by defendants, and declaration of Frederick Storms ("Storms"), a former employee of defendant HSG. On June 14, 2019, defendants likewise moved to exclude expert testimony of Nanci Stevens ("Stevens"), an expert retained by plaintiff.[4]

The two patents plaintiff alleges have been infringed are both entitled "expandable carry pouch with variable compression," both designate one inventor and applicant, Scott Evans ("Evans"), and both share identical abstracts, figures, and specifications. (See '210 patent (DE 70-2); '568 patent (DE 8-7)). Additionally, both claim priority to a common application, and the claims of each patent contain similar and repeated phrases.[5]

---

[3]     In the parties' joint claim construction statement, 17 references are identified for construction, many of which overlap and build on previous proposed constructions. This order, as well as parties in briefing, group these references for organizational purposes.

[4]     Throughout briefing, plaintiff has maintained expert testimony is not needed to construe the claims at issue, but offered the expert testimony of Stevens following defendants' retention of Cagle. (See, e.g., DE 80 at 5 ("Edge-Works has consistently maintained that expert testimony is not necessary to construe the simple, non-technical terms used in the patents at issue.")).

[5]     The application resulting in the '568 patent is the parent application to the application that resulted in the '210 patent. Plaintiff has filed Certification of Correction from the PTO which states the application for the '210 patent is a "Continuation of U.S. Patent Application No. 14/881,081 filed October 12, 2015, now U.S. Patent No. 9,668,568, which claims the benefit of U.S. Provisional Application No. 62/190,025 filed July 8, 2015 and U.S. Provisional Application No. 62/063,133 filed October 13, 2014." (See '210 patent (DE 70-2) at 11; DE 81-2 at 354-55 ("Accordingly, the effective filing date of the '210 patent is October 13, 2014"); see also DE 32 at 9-11 (court holding effective filing date for the '210 patent was October 12, 2015, prior to plaintiff's submission of the Certification of Correction)).

Plaintiff alleges infringement of independent claims 1 and 7 of the '210 patent which claims are included as follows with the disputed terms indicated:

1. An expandable carry pouch defining an interior compartment defined by

    a. a front wall with an interior and exterior surface with apertures along a perimeter of the front wall;

    b. a back wall opposed to the front wall with an interior and exterior surface with apertures along a perimeter of the back wall;

    c. a pair of opposing side walls;

    d. at least one <u>covered recessed vertical channel molded into the interior</u> surface of the front or back wall between the apertures along the perimeter of the front or back wall <u>extending longitudinally along the length of the front or back wall</u> with <u>openings on opposite ends</u> and molded into the front wall or back wall; and

    e. a top open end;

wherein the front wall and back wall are compressed towards one another using a binding device weaved or laced through the apertures in the perimeter of the front and back wall and the <u>recessed vertical channel</u> and the <u>openings of the vertical channel</u> . . . .

7. An expandable carry pouch defining an interior compartment defined by

    a. a front wall with an interior and exterior surface with apertures along a perimeter of the front wall;

    b. a back wall opposed to the front wall with an interior and exterior surface with apertures along a perimeter of the back wall;

    c. a pair of opposing side walls;

    d. at least one <u>covered recessed horizontal channel molded into the interior</u> surface of the front or back wall between the apertures along the perimeter of the front or back wall <u>extending crosswise along the length of the front or back wall</u> with <u>openings on opposite ends</u> and molded into the front wall or back wall; and

    e. a top open end;

wherein the front wall and back wall are compressed towards one another using a binding device weaved or laced through the apertures in the perimeter of the front and back wall and the <u>recessed horizontal channel</u> and the [] <u>openings of the horizontal channel</u>.

('210 patent (DE 70-2) col. 4, ll. 28-47; col. 4, l. 64-col. 5, l. 16 (emphasis added)).

As seen above, the '210 patent provides for an expandable carry pouch with variable compression that can be used to carry tactical gear and that includes channels into which a "binding device" is woven for compression purposes. Defendants argue, and plaintiff does not dispute, that with respect to the channel referenced in claim 1 of the '210 patent, the following 11 features or limitations exist: 1) There must be at least one channel; 2) The channel must be vertical; 3) The channel must be recessed; 4) The recessed channel must also be covered; 5) The channel must also be molded into the interior surface of the front or back wall; 6) The channel must be molded between the apertures; 7) The apertures must be along the perimeter of the front or back wall; 8) The channel must extend longitudinally; 9) The channel must extend the length of the front or back wall; 10) The channel must have openings on opposite ends; and 11) The channel's openings must be molded into the front or back wall. (<u>See</u> DE 81 at 7). Likewise, the same features or limitations exist to the channel described in claim 7 of the '210 patent, except that the directions are "horizontal" and "crosswise," instead of "vertical" and "longitudinally." (<u>Id.</u>).

Plaintiff also alleges infringement of independent claim 14 as well as dependent claims 15 and 16 of the '568 patent, which claims are included as follows with the disputed terms indicated:

14. An expandable carry pouch defining an interior compartment defined by

a. a front wall with a proximal side edge and a bottom edge, a forward panel segment extending in a substantially perpendicular plane outward from the proximal side edge of the front wall and a bottom panel segment extending in a substantially perpendicular plane outward from the bottom edge of the front wall;

b. a back wall opposed to the front wall with a distal side edge and a bottom edge, a rearward panel segment extending in a substantially perpendicular plane outward from the distal side edge of the back wall and a bottom panel segment extending in a substantially perpendicular plane outward from the bottom edge of the back wall;

c. at least one <u>vertical channel with openings on opposite ends molded into the front wall or back wall</u>;

d. at least one <u>recessed horizontal channel with openings on opposite ends molded into the front wall or back wall</u>; and

e. a top open end

wherein the front wall and back wall are compressed towards one another using a binding device with ends weaved or laced through the openings of the <u>vertical channel</u> and the openings of the <u>horizontal channel</u>.

15. The pouch of claim 14 wherein the front wall, front wall forward panel segment, and front wall bottom panel segment comprise a single continuous and rigid component.

16. The pouch of claim 14 wherein the back wall, back wall rearward panel segment, and back wall bottom panel segment comprise a single continuous and rigid component.

('568 patent (DE 8-7) col. 5, l. 31-col. 6, l. 31 (emphasis added)).[6]

Both the '210 and '568 patents provide for the following figures 1 and 3 as embodiments of

both patents:

---

[6]     As indicated above, the parties do not request construction of any terms found in dependant claims 15 and 16 of the '568 patent; thus the court's claim construction order focuses on disputed terms found in independent claim 14 of the '568 patent as well as those found in independent claims 1 and 7 of the '210 patent.



FIG. 1



FIG. 3

## DISCUSSION

A.     Claim construction principles and procedures

Analysis of infringement involves two steps. "The first step is determining the meaning and scope of the patent claims asserted to be infringed." Markman v. Westview Instruments, Inc., 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc) "The second step is comparing the properly construed claims to the device accused of infringing." Id. It is the first step, "commonly known as claim construction or interpretation," that is at issue at the present stage of this case. Id.

The first "two paragraphs of section 112 frame the issue of claim interpretation for [the court]." Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (citing 35 U.S.C. § 112). "The second paragraph requires us to look to the language of the claims to determine what the applicant regards as his invention." Id. (internal quotations omitted). "On the other hand, the first paragraph requires that the specification describe the invention set forth in the claims." Id. A third component of a patent for claim construction purposes is the "prosecution history." Markman, 52 F.3d at 980. Prosecution history is the "public record" of proceedings in the PTO, which may include statements by the inventor, or on his behalf, while a patent application is pending approval. Id.

It is the court's role in claim construction to "analyze the text of the patent and its associated public record and apply the established rules of construction, and in that way arrive at the true and consistent scope of the patent owner's rights to be given legal effect." Id. at 979. "It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." Phillips, 415 F.3d at 1312 (internal quotations omitted). Thus, the goal of claim construction is to determine the meaning of the claims. See id.

"To ascertain the meaning of claims," the court must consider primarily the "intrinsic record," comprised of "the claims, the specification, and the prosecution history." Markman, 52 F.3d at 979; Phillips, 415 F.3d at 1313. Secondarily, the court may consider "extrinsic evidence" in the form of expert testimony, technical information, and dictionaries. Id.

1.      Intrinsic Evidence

"[T]he words of a claim are generally given their ordinary and customary meaning." Phillips, 415 F.3d at 1312 (internal quotations omitted). In turn, "the ordinary and customary

meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." Id. at 1313. In addition, the claims "must be read in view of the specification, of which they are a part." Id. at 1315 (quotations omitted). "[T]he specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." Id. (internal quotations omitted).

"[A]lthough the specification often describes very specific embodiments of the invention, [the Federal Circuit has] repeatedly warned against confining the claims to those embodiments." Id. at 1323. "Much of the time, upon reading the specification in that context, it will become clear whether the patentee is setting out specific examples of the invention to accomplish those goals, or whether the patentee instead intends for the claims and the embodiments in the specification to be strictly coextensive." Id.

"[T]he prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." Id. at 1317. Nevertheless, the court cannot "rely on the prosecution history to construe the meaning of the claim to be narrower than it would otherwise be unless a patentee limited or surrendered claim scope through a clear and unmistakable disavowal." 3M Innovative Properties v. Tradegar Corp., 725 F.3d 1315, 1322 (Fed. Cir. 2013).

2.      Extrinsic Evidence

"Although [the Federal Circuit has] emphasized the importance of intrinsic evidence in claim construction, [the court has] also authorized district courts to rely on extrinsic evidence, which 'consists of all evidence external to the patent and prosecution history, including expert and inventor

testimony, dictionaries, and learned treatises.'" <u>Phillips</u>, 415 F.3d at 1317 (quoting <u>Markman</u>, 52 F.3d at 980).

"[E]xtrinsic evidence in the form of expert testimony can be useful to a court for a variety of purposes, such as to provide background on the technology at issue, to explain how an invention works, to ensure that the court's understanding of the technical aspects of the patent is consistent with that of a person of skill in the art, or to establish that a particular term in the patent or the prior art has a particular meaning in the pertinent field." <u>Id.</u> at 1318. "A trial judge has sole discretion to decide whether or not [she] needs, or even just desires, an expert's assistance to understand a patent. [The Federal Circuit] will not disturb that discretionary decision except in the clearest case." <u>Markman</u>, 52 F.3d at 981. "However, conclusory, unsupported assertions by experts as to the definition of a claim term are not useful to a court." <u>Phillips</u>, 415 F.3d at 1318.

B.      Analysis

1.      Disputed Terms

The parties dispute five sets of terms, which the court will take up in turn below.

a.      "Covered" in '210 Patent Claims 1 and 7

The court first addresses the use of "covered" in the context of claims 1 and 7 in the '210 patent, holding intrinsic evidence sufficient to determine that the definition of "covered" is "something on top of or in front of (something) in order to protect or conceal it."

As a threshold matter, the parties agree that a "recessed . . . channel molded into the interior" means a "passageway formed by indenting the interior surface during the molding process." (DE

79 at 2). Thus, the court is tasked with construing "covered" as to a passageway, or channel, formed by indenting the interior surface during the molding process.[7]

The parties necessarily revisit and expand upon arguments made previously in the context of plaintiff's motion for preliminary injunction, where the court construed, solely for the purposes of resolution of that motion, "covered" as to "put something on top or in front of (something) in order to protect or conceal it." (DE 32 at 12-13); see Sofamor Danek Group, Inc. v. DePuy–Motech, Inc., 74 F.3d 1216, 1221 (Fed. Cir.1996) (holding court may make the determination of likelihood of success on the merits in the context of a preliminary injunction determination based on a tentative claims construction and "exercise its discretion to interpret the claims at a time when the parties have presented a full picture of the claimed invention and prior art").

Here, the court exercises its discretion to interpret this claim following more thorough discovery and briefing on this issue, but the court's conclusion as to the construction of "covered" remains the same, to put or "to have something on top of or in front of (something) in order to protect or conceal it." The court therefore rejects defendants' construction requiring "covered," when applied to the relevant sections of the claims, to mean "having a cover or lid to enclose a . . . passage." The court's construction is supported by the plain language of the patent, the specification, and, to a limited extent, the prosecution history.

First, the plain language of the claims at issue requires the "expandable carry pouch" that is the subject of the '210 patent to include a channel, one which is identified as vertical in claim 1 and as horizontal in claim 7, and that those channels be "covered," "recessed," and "molded into the

_____

[7]     Throughout the claim construction order, the court will employ the word "channel" consistent with the patents at issue. However, the court construes the word "channel" consistent with the parties' agreed-upon definition of "passageway," as seen at the end of this order where the court includes a chart addressing the 17 words, terms, and phrases that are in dispute based on the court's construal of the 5 sets of terms addressed specifically herein.

interior surface." Nothing in the plain language supports defendant's suggested language further requiring a cover or lid that <u>encloses</u> the channel.

Turning to the specification, no mention is made specifically as to the word "cover." However, the specification directs that the vertical and horizontal channels in part "offer protection to the binding device 90 from internal and external forces" and "enhance the correct placement of the binding device 90" within the channel. ('210 patent (DE 70-2) col. 3, ll. 31-36). Thus, the binding device is not enclosed, but directed into the channel for protection.

The figures provided in the patent confirm this understanding. The channels are identified in figures 1 and 3 above as 70 and 80. (<u>See also</u> '210 patent (DE 70-2) col. 3, ll. 31-32 ("The vertical channels 70 and at least one horizontal channel 80 aid in retaining the binding device 90 . . .."). The channels are covered when viewed from the outside of the pouch in that the channels have something on top of them, protecting and concealing the channel. All figures included in the patent, including figure 2 reproduced below, are consistent with plaintiff's, not defendants', proposed construction in that no figure includes an enclosed channel.[8]

---

[8]    Defendants do not address how the figures as found in the '210 patent are consistent with defendants' proposed construction of "covered," but do move, in the alternative, as follows: "if the Court were to find now that the claim language cannot be reconciled with the patent figures and that the construction could result in multiple meanings for the claim terms, the patent language should be found indefinitie and unprotectable." (DE 87 at 8). The court declines to grant this relief where the court holds the intrinsic evidence sufficient to allow the court to construe the term "covered."



FIG. 2

The prosecution history also support plaintiff's construction, albeit to a limited extent. Plaintiff filed the '210 application[9] as a continuation of the '568 application,[10] and added the term "covered" to claims 1 and 7 to overcome prior art, specifically U.S. Patent No. 3,053,005 ("Byers patent"), (see DE 8-8), which has a channel with openings on opposite ends wherein the channel for the binding cord was not covered and was visible from the exterior:

[9]    For ease of reference, each application is cited by reference to its eventual patent number. U.S. Application No. 15/611,922, on which the '210 patent issued, is cited as the '210 application, which application can be found at docket entry 8-8.

[10]    U.S. Application No. 14/881,081, on which the '568 patent issued, is cited as the '568 application, which application can be found at docket entry 8-6.



(Byers patent (DE 81-3)).

On June 29, 2017, the examiner issued his first non-final office action where he stated as follows:

> In particular, it is unclear what structure is defined by the term "covered" as it relates to the channel. As disclosed in the drawings and specification, there does not appear to be any structure that actually covers either of the channels 70 and 80. In contrast, the drawings show the each of the channels 70 and 80 are readily seen and identified on each of the front and back walls and even further are actually accessible by the

15

apertures located therein. There is nothing disclosed that distinguishes a channel from a covered channel and therefore the claims are indefinite.

(DE 30-9 at 6).

Following this action and subsequent examiner interview, independent claims 1 and 7 were amended to add the additional requirements: 1) the channel also be "recessed," 2) the channel also be "molded into the interior surface of the front or back wall," and 3) the channel also be "between the apertures along the perimeter of the front or back wall."  (DE 30-10 at 2-3 ("Applicant has amended the claims to overcome the rejection in accordance with discussion during the Examiner interview of Aug. 16, 2017 and follow up phone discussion on Aug. 24, 2017.  As discussed, the channel is formed by a recessed area in the interior surface of the front and/or back walls."); DE 30-11).  The examiner then withdrew his rejections and the claims, as revised, were allowed.  The '210 patent was issued on October 24, 2017.

Plaintiff argues that these "amendments impart significant meaning as to the scope of the claimed channels," with the first amendment to include the word "covered" to avoid the Byers patent and additional amendment, to include the phrase "recessed . . . molded into the interior," to "clarify the precise manner in which these channels are covered."  (DE 86 at 6-7).  Plaintiff argues that following these amendments, "the metes and bounds by which the channel was being covered for purposes of the invention were clearly defined and accepted by the examiner."  (Id. at 7).

The prosecution history does not lend the amount of support plaintiff urges.  However, the prosecution history does indicate that "covered" was added to avoid the Byers patent, the examiner did not find the channels to be covered, but following the addition, in part, of "recessed . . . molded into the interior," apparently the examiner's concerns were allayed, although no rationale was provided.

Defendants argue in opposition, similar to the concerns expressed, and then allayed, by the examiner above, that "covered recessed . . . channel" is different from "recessed . . . channel," and plaintiff's proposed construction "does not add a limitation to the already recessed channel" and "instead the molding of the channel itself acts as and creates its own cover," "violating principles of claim construction" by rendering the word "covered" superfluous. (DE 81 at 18); see also Atlas IP, LLC v. Medtronic, Inc., 809 F.3d 599, 607 (Fed. Cir. 2015) (explaining the doctrine of claim differentiation "counsels against constructions that render some claim language superfluous").

To a certain extent, defendants are correct, in that plaintiff's proposed construction of the word "covered," which the court adopts, "teaches that the recessed portion not only forms the channel, but also serves as the barrier that protects, conceals, and 'covers' the channel." (DE 80 at 15). However, even though the channel is recessed, when looking at interior of the pouch, and covered, when looking at the exterior of the pouch, and also created by the molding of the interior of the pouch,[11] this does not render "covered" superfluous, where "covered" describes protection afforded the binding device consistent with the specification, and "recessed . . . molded into the interior" describes the location of the channel. (See '210 patent (DE 70-2) col. 3, ll. 31-36 (providing that the vertical and horizontal channels in part "offer protection to the binding device 90 from internal and external forces" and "enhance the correct placement of the binding device 90" within the channel)).[12]

---

[11]    Defendants argue the claims should be construed solely from the vantage point of the interior of the pouch, further arguing that from the interior the channel is recessed but not covered, thus requiring enclosure. (See, e.g., DE 81 at 18-19). Although the stacking of adjectives describing the channel, including that it be both recessed and covered from two different perspectives, is not ideal drafting practice, defendants provide no support, nor is the court aware of any, that requires construction from a singular perspective.

[12]    The parties agree that the binding device is protected in the interior. As stated by plaintiff, "[h]aving the binding cord guided through a channel that is recessed – and therefore removed from the insertion path – is what protects the cord." (DE 86 at 7 n.4; see also DE 81 at 19). The court rejects defendants argument that the binding device

Although not the most precise formulation, the claims at issue provide for a channel that is both covered and recessed, and the court construes "covered" in the context of these claims to mean that which has "something on top of or in front of (something) in order to protect or conceal it."

   b.   "Vertical" and "Horizontal" in '210 Patent Claims 1 and 7 and in '568 Patent Claim 14

Turning to the second set of disputed terms, plaintiff proposes the term "vertical" should be construed as meaning the channel extends in an "upward direction" and not be limited to "straight up and down." Similarly, plaintiff proposes the term "horizontal" should be construed as meaning "across" as opposed to "straight across from left to right." Thus, under plaintiff's proposed construction, horizontal and vertical channels could be placed on the pouch at multiple angles, as long as the horizontal channels generally were directed upward on a front or back wall of the pouch and the vertical channels were generally directed across the front or back wall of the pouch.

The court rejects plaintiff's proposed constructions. First, it is unclear at what angle the channels stop being "vertical" and become "horizontal" under this construction. Second, and more importantly, plaintiff's proposed constructions do not employ the ordinary and customary meaning of these terms and find no support in the language of the claims or in the specification, where there is no indication in either the language of the claims nor in the specification that horizontal or vertical have any other meaning than the commonly understood meaning of straight across from left to right or straight up and down. See Lo v. Microsoft Corp., No. CIV.A. 2:07-CV-322, 2009 WL 2960427,

───────────────

is not protected against the elements outside the pouch because "the cord shoots out of the pouch in at least eight (8) places from one channel plus more places from other channels, wraps around the pouch, and is generally exposed to the . . . elements . . . .," (DE 81 at 19 n.10). Although the binding device is exposed in part, protection is still afforded the binding device from exterior elements by the molding of the channel. Additionally, defendants' proposed construction, adding a "cover" to the channel on the interior of the pouch, would not provide further protection from the elements outside the pouch.

at *5–6 (E.D. Tex. June 11, 2009) ("The Court finds both "vertical" and "upright" are used in the '733 Patent in accord with their plain and ordinary meanings . . . . the Court construes 'vertical' and 'upright' to mean 'straight up, which is 90 degrees from horizontal.'").

Therefore, the court construes "vertical" to mean "straight up and down" and "horizontal" to mean "straight across from left to right." Had the patentee wanted vertical to mean only upward and horizontal to mean only across, those terms, instead of the more specific terms of vertical and horizontal, could have been employed, or the patentee could have defined these terms to so mean within the patent. See Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996) ("The specification acts as a dictionary when it expressly defines terms used in the claims or when it defines terms by implication.").

Plaintiff argues that because the specifications of the patents at issue do not limit embodiments of the patents to those that are "only rectangular in shape," this means that vertical and horizontal do not in fact mean vertical and horizontal, but instead means generally "upward" and "across." (See DE 80 at 17; see also '210 patent (DE 70-2) col. 3, ll. 47-55 (stating a pouch "can be molded to generic shapes so as to carry any item that may be of similar geometry or they can be molded to specific shapes so as to carry a specific item" including "radios, flashlights, batons, handcuffs, flash bangs, hand grenades, batteries, scopes or other aiming devices, or any and all items as may be considered useful in a tactical situation or environment.")). However, a pouch need not be rectangular for channels on that pouch to be straight up and down, or vertical, or straight across from left to right, or horizontal, even where, as argued by plaintiffs, orientation of the vertical

channel may conform to the shape of the embodiment.  (See DE 80 at 17).[13]  There is no indication in the patent that the channels have or could have any other orientation other than straight up and down or straight across from left to right.

Likewise, although the vertical orientation of the channel is further described as "extending longitudinally" and the horizontal channel is further described as "extending crosswise" in the '210 patent, use of these additional and less specific descriptive terms do not indicate that the original terms being described, vertical and horizontal, have a different meaning than that which is discussed above.  Thus, the court construes "vertical" to mean "straight up and down" and "horizontal" to mean "straight across from left to right."

c.      Length of Channels in '210 Patent Claims 1 and 7

There is no dispute between the parties that the vertical and horizontal channels must extend a certain length; however, the parties dispute whether the referenced channels must extend along a portion of the front or back wall, as submitted by plaintiff, or along the entire length of the front or back wall, as submitted by defendants.

Turning first to the vertical channel described in claim 1 of the '210 patent, the claim language requires this channel to be found "between the apertures along the perimeter of the front or back wall" and "extending longitudinally along the length of the front or back wall . . . ."  ('210 patent (DE 70-2) col. 4, ll. 39-40).  Although this language requires the channel to extend "along the length" of the wall, nothing in this language requires that the vertical channel extend along the entire length.

---

[13]      Although plaintiff seems to argue that there are innumerable shapes the pouches could take, at minimum, the patents direct that all pouches must have a front wall, a back wall, a pair of opposing side walls, and a top open end, limiting the number of potential shapes.

Additionally, although the figures of the '210 patent depict several vertical channels, identified by reference number "70," that extend the length of the pouch, nothing requires the channels to extend the full length of the pouch.  See Phillips, 415 F.3d at 1323 ("although the specification often describes very specific embodiments of the invention, [the Federal Circuit has] repeatedly warned against confining the claims to those embodiments.").

Defendants do not address the language of the patent nor the specification, except arguing without support that "[t]he phrase 'extending longitudinally along the length of the . . . wall' references the extension of the channel to the top and bottom of the edges of the walls.  It has both continuity and distance." (DE 81 at 22).  However, as already discussed, this phrase indicates where a channel is to be located, along the length of the wall, and does not require a certain length of channel.

Defendants do argue, however, that based on the reexamination of the '201 patent, the PTO "already implicitly determined" the relevant claim language "meant that the vertical channel must extend continuously along the length of the wall to nearly the top and bottom," where the examiner determined that a prior art reference, the Soldier Systems pictured below, was not invalidating prior art because this reference did not disclose "covered recessed vertical channels extending longitudinally along the length of the front or back wall."  (DE 81 at 19-20). Defendants further argue this is because this reference includes "multiple 'mini' channels . . . instead of one continuous channel extending the length of the wall." (Id. at 20).  Defendants argue that plaintiff "did not object to the examiner's determination of the scope of the claim," and is now bound by the examiner's determination.  (Id. at 23).



Review of the reexamination does not provide the support defendants seek. Although the examiner did dismiss the Soldier Systems, stating in one sentence that it "does not disclose that the covered recessed vertical channels extending longitudinally along the length of the front or back wall, " (DE 81-2 at 346; <u>see also</u> <u>id.</u> at 327-330, 343-348), no further explanation was provided. The examiner did not explain that Soldier Systems was rejected because of the supposed "mini channels" now identified by defendants. The examiner offered no explanation at all.

At best, this provides inconclusive support as how to properly construe the length of the channels. Without more, such is insufficient for the court to incorporate the limitation defendants seek, based on the reexamination of the '210 patent, that the channels at issue should extend the length of the pouch.[14]  <u>See</u> <u>Liquid Dynamics Corp. v. Vaughan Co.</u>, 355 F.3d 1361, 1368 (Fed. Cir. 2004) ("Because the plain language of the claim was clear and uncontradicted by anything in the

---

[14]      That the patentee, Evans, in deposition, drew a continuous red line down the entire length of the front wall when asked to mark the channel on Figure 1 in the '210 patent does not counsel for a different result, particularly where Evans thereafter clarified that "the length" could mean "a portion."  (<u>See</u> DE 86-2 at 4).

written description or the figures, the district court should not have relied upon the written description, the figures, or the prosecution history to add limitations to the claim. Under such circumstances, relying on the written description and prosecution history to reject the ordinary and customary meanings of the words themselves is impermissible.").

Turning to the horizontal channel described in claim 7 of the '210 patent, the same conclusion follows, where the claim language requires this channel to be located "between the apertures along the perimeter of the front or back wall" and "extending crosswise along the length of the front or back wall," ('210 patent (DE 70-2) col. 5, ll. 7-9), but there is no requirement that the channel extend all the way across the front or back wall.[15]

Thus, the court construes a vertical or horizontal channel that extends longitudinally or crosswise "along the length of the front or back wall" as extending "along a portion of the front or back wall."[16]

d.    "Apertures" and "Openings" in '210 Patent Claims 1 and 7

_____

[15]    Defendants cite Hodak v. Jedco Products, Inc., No. CIV.A 07-CV-0554, 2009 WL 473943 (W.D. Pa. Feb. 25, 2009), in support of their position.  In Hodak, while construing the phrase "peripheral edge extending therearound," the court ruled that one of ordinary skill in the art of swimming pool assemblies "would understand that the claimed device must have an edge extending entirely around the central opening so that a cover element may be sealingly engaged to prevent pool water from entering the skimmer."  Hodak, 2009 WL 473943, at *6.  The court reached this conclusion on the basis that the device would not function if constructed differently. Here, however, there is nothing to suggest that a channel must extend the entire length of the front or back wall for the pouch in the '210 patent to work.

[16]    Similarly, the parties seek the court to construe the length of the channels as found in claim 14 of the '568 patent, with plaintiff proposing construction that the channels "run[] from one point on the surface to another point," (DE 79 at 9-10), and defendants proposing that the channels "run[] from top to bottom of the surface," (id. at 17-18). However, unlike the '210 patent, the '568 patent does not include the phrase "along the length of the front or back wall" in any claims, and states only as relevant here that the pouch contains at least one vertical channel and one horizontal channel, both of which have "openings on opposite ends molded into the front wall or back wall." ('568 patent (DE 8-7) col. 4, ll. 52-55).  Regarding the '568 patent, there is no basis for defendants' proposed language that the channel "run[] from top to bottom of the surface," and defendants offer no argument in support.  Thus, the court construes the length of the channels as found in claim 14 of the '568 patent consistent with plaintiff's proposed language.

23

In the '210 patent, each channel is described as existing "between the apertures" and having "openings on opposite ends."  It is further described that the pouch is compressed by using a binding device woven through the apertures, the recessed vertical channel, and the "openings of the . . . channel."

Based on this claim language, "apertures" and "openings" are both used to refer to various openings found on the pouch, some of which are not at the ends of the channels, referred to as apertures, and some of which are, referred to as openings.  See Therasense, Inc. v. Becton, Dickinson & Co., 593 F.3d 1325, 1329 (Fed. Cir. 2010) (court construing "aperture" to mean "opening").

Plaintiff disagrees, arguing that "apertures" and "openings" are used interchangeably in the patent.  However, the claims language differentiates between these two very similar words, as stated above, based on what opening is being referenced, with apertures used to describe all holes except those found at the end of the channels, and openings used to describe only the holes found at the end of channels.[17]

Thus, the court construes "openings" to be distinct from "apertures," consistent with defendants' proposed definition, which the court discusses more below, in the context of "openings on opposite ends" versus "openings of the . . . channel."[18]

e.      "Openings on Opposite Ends" and "Openings of the . . . Channel" in '210 Patent Claims 1 and 7 and in '568 Patent Claim 14

---

[17]      Defendants argue that because the word "aperture" does not appear in the claim language that the parties seek to be construed, the word need not be construed.  (See DE 87 at 5).  However, because defendants' proposed claim language repeatedly includes reference to apertures as distinct from openings, this argument is unavailing.  (See, e.g., DE 79 at 14).

[18]      Because claim 14 of the '568 patent only addresses "openings" and not "apertures," the court need not differentiate openings from apertures in the context of that patent.

As stated above, in the claims of the '210 patent, each channel is described as existing "between the apertures" and having "openings on opposite ends." It is further described that the pouch is compressed by using a binding device woven through the apertures, the recessed vertical channel, and the "openings of the . . . channel." Similarly, in the '568 patent, each channel is described as having "openings on opposite ends," and the pouch is compressed by using a binding device woven through "the openings of the vertical channel and the openings of the horizontal channel."

There appears no distinction between the use of the word "on" and "of" in this context when referring to "openings on opposite ends" and "openings of the . . . channel." See Bancorp Servs., L.L.C. v. Hartford Life Ins. Co., 359 F.3d 1367, 1373 (Fed. Cir. 2004) ("Hartford is correct that the use of both terms in close proximity in the same claim gives rise to an inference that a different meaning should be assigned to each . . . That inference, however, is not conclusive; it is not unknown for different words to be used to express similar concepts, even though it may be poor drafting practice."); Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc., 381 F.3d 1111, 1120 (Fed. Cir. 2004) ("Thus, the context does not show that 'connected' and 'associated' should be differentiated into the definitions proposed by Safari, and we must conclude that this is simply a case where the patentee used different words to express similar concepts, even though it may be confusing drafting practice").

Plaintiff agrees, proposing both "of" and "on" to be construed as "on," with defendants proposing a more elaborate construction, provided as follows in the context of claim 1 of the '210 patent:

| Reference | Phrase | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|---|
| '210 Patent Claim 1 | "openings of the vertical channel" | openings on the ends of each vertical channel | Openings, which are distinct from apertures and which originate, or consist of, the opposite ends of the vertical channel . . . |
| '210 Patent Claim 1 | "openings on opposite ends" | openings on opposite ends of each vertical channel | Openings, which are distinct from apertures, in contact with and supported by the top surface of opposite ends of the channels |

In support of defendants' proposed construction, defendants argue their construction gives meaning to both "of" and "on," is supported by the dictionary definitions of the terms, and is consistent with the purpose of the "openings of the vertical channel," as described by Evans in deposition, who testified that at the top and bottom origins of the vertical channel, the binding cord turns ninety degrees, egresses the channel, and can be used to bind a second, stacked pouch, whereas the holes in the middle of the channel serve no such purpose. (DE 81 at 26-27).

However, as stated above, it is not necessary to construe "of" and "on" differently whereas here there is no indication the terms should be so construed. See Bancorp, 359 F.3d at 1373; Innova/Pure Water, 381 F.3d at 1120. Additionally, the distinction defendants seek to make regarding the purpose of the "openings of the vertical channel," are encapsulated by distinguishing "opening" from "aperture," and therefore distinguishing "of" and "on" is unnecessary.[19] Thus, the court construes "of" and "on" as "on," consistent with plaintiff's proposed construction.

---

[19] Defendants clarify in their responsive claim construction brief that "an 'opening of' the channel originates and terminates a channel, whereas an 'opening on' a channel has molded plastic circumscribing it." (DE 87 at 4). However, again, such distinction is more simply effectuated by distinguishing "opening" and "aperture."

In sum, based on the above constructions, the disputed terms, phrases, and clauses are construed as follows:

| | Reference | Word, Term, or Phrase | Court's Construction |
|---|---|---|---|
| 1 | '210 Patent Claim 1 | "Covered" | To have something on top of or in front of (something) in order to protect or conceal it |
| 2 | '210 Patent Claim 1 | "Covered recessed vertical channel molded into the interior" | To have something on top of or in front of a straight up and down passageway that is formed by indenting the interior surface during the molding process in order to protect or conceal the passageway[20] |
| 3 | '210 Patent Claim 1 | "Vertical channel . . . extending longitudinally along the length of the front or back wall" | A straight up and down passageway extending longitudinally along a portion of the front or back wall |
| 4 | '210 Patent Claim 1 | "Extending longitudinally along the length of the front or back wall" | Extending longitudinally along a portion of the front or back wall |
| 5 | '210 Patent Claim 1 | "Recessed vertical channel" | A straight up and down passageway that is formed by indenting the interior surface during the molding process |
| 6 | '210 Patent Claim 1 | "Openings of the vertical channel" | Openings, as distinct from apertures, on the ends of each vertical passageway |
| 7 | '210 Patent Claim 1 | "Openings on opposite ends" | Openings, as distinct from apertures, on opposite ends of each vertical passageway |

---

[20]     The parties propose slightly different but substantively similar language for "molded into the interior" and related terms, such as "recessed," with plaintiff proposing the language adopted by the court and defendants proposing as follows: "by indenting plastic away from the inside surface during the molding process." (See DE 79 at 12). The court adopts plaintiff's proposed language where there is no reference made to "plastic" in the claim language and where the parties have agreed that "recessed . . . channel molded into the interior" means a "passageway formed by indenting the interior surface during the molding process." (Id. at 2).

| 8 | '201 Patent Claim 7 | "covered recessed horizontal channel molded into the interior" | To have something on top of or in front of a straight across from left to right passageway that is formed by indenting the interior surface during the molding process in order to protect or conceal the passageway |
|---|---|---|---|
| 9 | '201 Patent Claim 7 | "Horizontal channel . . . extending crosswise along the length of the front or back wall" | A straight across from left to right passageway extending crosswise along a portion of the front or back wall |
| 10 | '201 Patent Claim 7 | "Recessed horizontal channel" | A straight across from left to right passageway formed by indenting the interior surface during the molding process |
| 11 | '201 Patent Claim 7 | "Openings on opposite ends" | Openings, as distinct from apertures, on opposite ends of each horizontal passageway |
| 12 | '201 Patent Claim 7 | "Openings of the horizontal channel" | Openings, as distinct from apertures, on the ends of each horizontal passageway |
| 13 | '568 Patent Claim 14 | "Vertical channel" | A straight up and down passageway running along a portion of the front or back wall |
| 14 | '568 Patent Claim 14 | "Horizontal channel" | A straight across from left to right passageway running along a portion of the front or back wall |
| 15 | '568 Patent Claim 14 | "Vertical channel with openings on the opposite ends molded into the front or back wall" | A straight up and down passageway running along a portion of the front or back wall with openings on the opposite ends of that passageway, where the passageway is formed during the molding process[21] |
| 16 | '568 Patent Claim 14 | "Recessed horizontal channel with openings on opposite ends molded into the front or back wall" | A straight across from left to right passageway running along a portion of the front or back wall with openings on the opposite ends of that passageway, where the passageway is formed by indenting the wall's surface during the molding process |

---

[21] Only the horizontal channel, not the vertical channel, in claim 14 of the '568 patent is "recessed." Thus, the court rejects defendants' proposed construction for the vertical channel in claim 14 of the '568 patent that the channel is made "by indenting plastic." (See DE 79 at 18).

| 17 | '568 Patent Claim 14 | "Openings on opposite ends" | Openings on the opposite ends of each vertical or horizontal passageway |

2.      Motions to Exclude Expert Testimony

Plaintiff has moved to exclude expert testimony of Cagle, who has provided expert report concerning the meaning of "covered," as used in the '210 patent, (DE 79-2), and Storms, who provided declaration which also, in part, concerned the meaning of "covered," (DE 23).  Defendants have likewise moved to exclude expert testimony of Stevens offered by plaintiff, (DE 79-1), although, as stated above, plaintiff has maintained expert testimony is not needed to construe the claims at issue, including plaintiff's own expert, and that plaintiff retained Stevens only in an abundance of caution after defendants retained Cagle.  (See, e.g., DE 80 at 5).

As evidenced by the court's holding above, expert testimony is not needed to construe the claims at issue, whereas here, intrinsic evidence is sufficient to construe all disputed terms.  See, e.g., Interval Licensing LLC v. AOL, Inc., 766 F.3d 1364, 1370 n.6 (Fed. Cir. 2014) ("Although the Defendants point to the testimony of Interval's expert in support of their argument that the "unobtrusive manner" phrase is indefinite . . . we find it unnecessary to rely on that testimony (or any other extrinsic evidence) to reach our conclusion.  Like the district court, we find the claims indefinite based on the claims, the written description, and the prosecution history."); Phillips Petroleum Co. v. Huntsman Polymers Corp., 157 F.3d 866, 870 (Fed. Cir. 1998) ("When the intrinsic evidence unambiguously delineates the scope of the patent, resort to extrinsic evidence, including expert testimony, is unnecessary.").  Thus, the parties' motions to exclude are denied as moot.

**CONCLUSION**

The court has construed the disputed claim terms as set forth herein. Plaintiff's motion to exclude expert testimony (DE 82) is DENIED AS MOOT. Defendants' motion to exclude expert testimony (DE 84) is DENIED AS MOOT. Pursuant to the case management order, (see DE 61), fact discovery shall be completed by November 15, 2019. Expert discovery closes on March 2, 2020, and dispositive motions are due by April 3, 2020.

SO ORDERED, this the 12th day of September, 2019.


LOUISE W. FLANAGAN
United States District Judge